1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

TONI SUE HOLMES,

                Plaintiff,

11

v.

12

13

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

14

15

                Defendant.

16

CASE NO. 3:16-cv-05367 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

17

       This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

18

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

19

Magistrate Judge and Consent Form, Dkt. 3; Consent to Proceed Before a United States

20

Magistrate Judge, Dkt. 5). This matter has been fully briefed (*see* Dkt. 9, 10, 11).

21

       After considering and reviewing the record, the Court concludes that the ALJ

22

erred when evaluating the medical evidence provided by plaintiff's treating physician

23

regarding her physical limitations. The ALJ's finding that plaintiff demonstrated normal

24

muscle strength and range of motion does not necessarily demonstrate any inconsistency with the opinion from a treating physician that plaintiff had lifting limitations and must alternate between sitting and standing in order to relieve pain or discomfort. This is especially the case here, as plaintiff's case has been "complicated by significant hernias and repairs  . . . ." (AR. 465). The ALJ also failed to explain why she did not adopt a limitation from plaintiff's treating physician that plaintiff had limitations in her ability to report to work on a consistent basis (AR. 542).

Therefore, this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration consistent with this order.

<u>BACKGROUND</u>

Plaintiff, TONI SUE HOLMES, was born in 1969 and was 40 years old on the alleged date of disability onset of October 1, 2009 (*see* AR. 145-51). Plaintiff has a GED and was a certified real estate agent (AR. 573-74).  Plaintiff has work history as a receptionist and real estate agent (AR. 763). Plaintiff stopped working in real estate when, because of the pain and pain meds, she felt she just could not do it anymore (AR. 574).

According to the ALJ, through the date last insured, plaintiff has at least the severe impairments of "major depressive disorder; panic disorder; abdominal pain syndrome; and obesity (20 CFR 404.1520(c))" (AR. 548).

At the time of the hearing, plaintiff was living in a home with her husband and five and a half year old grandson (AR. 573, 607-08).

1

2

### PROCEDURAL HISTORY

Plaintiff's application for disability insurance benefits ("DIB") pursuant to 42

U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following

reconsideration (*see* AR. 69-80, 82-96). Plaintiff's first administrative hearing resulted in

an unfavorable decision (AR. 15-34), followed by a remand from the district court (AR.

649-62 (14-cv-5936-KLS)).

Plaintiff's second requested hearing was held before Administrative Law Judge

Cynthia D. Rosa ("the ALJ") on October 28, 2015 (*see* AR. 598-617). On February 26,

2016, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not

disabled pursuant to the Social Security Act (*see* AR. 543-66).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) The ALJ

erred in rejecting the medical opinions of Joseph Regimbal, MD; Barbara Dahl, PhD; and

Jesse McClelland, MD; and (2) The ALJ's errors were not harmless (*see* Dkt. 9, p. 1).

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

denial of social security benefits if the ALJ's findings are based on legal error or not

supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d

1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

1999)).

<u>DISCUSSION</u>

**Did the ALJ err in rejecting the medical opinions of Joseph Regimbal, MD; Barbara Dahl, PhD, and Jesse McClelland, MD?**

First, defendant contends that the Court should not consider some of plaintiff's assignments of error due to the "law of the case" doctrine. As noted by defendant, "a court is generally precluded from considering an issue that was decided explicitly or by necessary implication in the previous disposition" (Dkt. 10, p. 2 (citing *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)). This doctrine supports the efficient operation of the courts. *See id.* (citation omitted). However, there are two problems with defendant's argument. The Court did not "implicitly f[ind] no error in the ALJ's evaluation of Dr. Regimbal's and Dr. Dahl's opinions," as suggested by defendant, as whether or not there was such error was irrelevant to the Court's decision; and, the particular rationale by the ALJ for her failure to credit fully those opinions in the written decision currently before this Court could not have been affirmed by this Court previously, as they were not part of the previous written decision (Dkt. 10, p. 3).

Defendant argues specifically that the ALJ's evaluation of the medical opinions of Drs. Regimbal and Dahl should not be considered by this Court. However, plaintiff replies that the ALJ's original findings regarding these opinions were vacated, as the Appeals Council vacated the prior ALJ decision following remand of the matter (*see* Dkt. 11, p. 2 (citing AR. 664)). Plaintiff is correct in this argument.

The Court also notes that the legitimacy of the ALJ's rejection of the medical opinions of Drs. Regimbal and Dahl was not decided by the Court previously, either

explicitly or by implication (*see* AR. 649-62 (14-cv-5936-KLS)). Instead, the Court

concluded that "the ALJ erred in evaluating the medical evidence, and thus in assessing

plaintiff's residual functional capacity ('RFC'), and therefore in determining plaintiff to

be not disabled" (AR. 650). In so concluding, the Court evaluated only the ALJ's failure

to credit fully the medical opinion of Dr. McClelland (AR. 652-57). The ALJ's failure to

credit fully the medical opinions of Drs. Regimbal and Dahl was not discussed at all by

the Court, and was not decided by necessary implication because whether or not these

two opinions were rejected properly or improperly had no bearing on whether or not the

rejection of Dr. McClelland's opinion was proper.

In addition, perhaps most persuasively, plaintiff also notes that after "the ALJ

started over in the case and re-evaluated the evidence of the record anew, including re-

evaluating the opinions of Drs. Regimbal and Dahl, [] the ALJ gave different rationales in

each case for rejecting their medical opinions (*see* Dkt. 11, p. 2 (citing as a comparison,

"the ALJ's rationale in 2013 vs. 2016[:] AR. 28/AR. 556-57 for Dr. Regimbal and AR.

28 vs. AR. 559-60 for Dr. Dahl")). Plaintiff argues that because "the ALJ offered

different rationales for rejecting Drs. Regimbal and Dahl's medical opinion on remand,

plaintiff is free on this appeal to challenge the ALJ's rationales absent constraint by the

law of the case doctrine" (*id*.). Plaintiff obviously did not have any opportunity to object

to the rationale offered by the ALJ in her 2016 written opinion when before this Court

previously.

The Court concludes that plaintiff's argument is persuasive. Even if the ALJ's

original rationale for failing to credit fully these particular medical opinions in her 2013

decision was not challenged and was appropriate, the 2013 written decision was vacated

by the Appeals Council, and the ALJ offered different rationales for failing to credit fully

these particular medical opinions in her 2016 written decision (*see* AR. 664). The 2013

written decision is not before this Court. Plaintiff has brought a challenge of the ALJ's

2016 written decision to this Court and the Court will consider plaintiff's arguments (*see*

AR. 546-61).

Plaintiff contends that the ALJ erred when evaluating the medical opinions

provided by two of her treating doctors and by one of her examining physicians, all of

which were contradicted by state agency doctors' medical opinions. Defendant contends

that there is no harmful legal error.

When an opinion from an examining or treating doctor is contradicted by other

medical opinions, the treating or examining doctor's opinion can be rejected only "for

specific and legitimate reasons that are supported by substantial evidence in the record."

*Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d

1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)); *see*

*also* 20 C.F.R. §§ 404.1527(a)(2) ("Medical opinions are statements from physicians and

psychologists or other acceptable medical sources that reflect judgments about the nature

and severity of your impairment(s), including your symptoms, diagnosis and prognosis,

what you can still do despite impairment(s), and your physical or mental restrictions"). In

addition, a "treating physician's medical opinion as to the nature and severity of an

individual's impairment must be given controlling weight if that opinion is well-

supported and not inconsistent with the other substantial evidence in the case record."

*Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at

*14 (9th Cir. 2001) (*citing* SSR 96-2p, 1996 SSR LEXIS 9).

### A. Dr. Joseph Regimbal, MD, treating physician

Dr. Regimbal was one of plaintiff's treating physicians and offered specific

opinions regarding plaintiff's functional limitations on January 18, 2012 (AR. 535-42).

As noted by the ALJ, Dr. Regimbal "opined that the claimant could lift 10 pounds

occasionally and less than 10 pounds frequently, stand and/or walk less than two hours in

an eight hour workday [and] also opined that the claimant must alternate sitting and

standing to relieve pain or discomfort . . . ." (AR. 556). The ALJ gave little weight to

Dr. Regimbal's opinion (AR. 557).

In support of the ALJ's failure to credit fully Dr. Regimbal's opinion, the ALJ

relied on the finding that the "overall exam findings that show full motor strength and

normal range of motion are inconsistent with his opinion," further noting that while "the

claimant needs restrictions on lifting due to her prior abdominal surgery and hernia

repair, the claimant's activities show that she is capable of at least a light residual

functional capacity" (*id*.). The ALJ provided an example, noting that Dr. Regimbal noted

that plaintiff was caring for her grandchild and involved in numerous projects" (*id*. (citing

AR. 338-40)).

The ALJ does not reference any evidence that plaintiff's care for her grandchild

did not, for example, allow for plaintiff to alternate between sitting and standing, or

required more than two hours of standing and walking in an eight-hour day. Similarly, the

fact that plaintiff demonstrated normal motor strength in her extremities does not

demonstrate that she can lift more than 10 pounds occasionally, did not need to alternate between sitting and standing, and could stand or walk more than two hours in a eight-hour workday. In addition, having normal motor strength in one's arms and legs does not necessarily indicate the ability to lift, especially here, where the ALJ acknowledges that plaintiff "needs restrictions on lifting due to her prior abdominal surgery and hernia repair" (AR. 557). *See also, e.g., Sanchez v. Colvin*, 2014 U.S. Dist. LEXIS 52604 at *5 n.1, *5-*6 (C.D. Cal 2014) (finding that a medical opinion of "strict limitations [on sitting, standing, walking, and lifting] appear[ed] reasonable in light of medical findings that '[a]fter repair of recurrent incisional hernias, recurrence rates of up to 48 percent have been reported'") (citations omitted). Plaintiff's case has been "complicated by significant hernias and repairs  . . . ." (AR. 465). Finally, the ALJ does not explain what bearing normal range of motion has on Dr. Regimbal's opinion, or how range of motion findings are inconsistent with Dr. Regimbal's opinions regarding plaintiff's limitations.

The ALJ also relied on her assumption that taking care of "a toddler also would necessitate more than two hours of standing and walking in an eight hour day" (AR. 557). However, the ALJ does not provide any evidence for this assumption. An ALJ may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citing *Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22. Here, the ALJ's assumption that taking care of "a toddler also would necessitate more than two hours of standing and walking in an eight hour day" is speculation and not based on substantial evidence in the record (AR.

557). It also is not a legitimate reason for failing to credit fully the medical opinion of a treating physician. Furthermore, taking care of a toddler is not necessarily inconsistent with Dr. Regimbal's opinion that plaintiff must periodically alternate sitting and standing in order to relieve pain or discomfort (*see* AR. 536).

The Court also notes that plaintiff's full motor strength and normal range of motion and her caring for her grandchild and being involved in numerous projects are not inconsistent with, and appear to have no relation to, Dr. Regimbal's opinion that plaintiff would be severely limited in "her ability to <u>consistently</u> be available for employment activities" due to her combined symptom complex, frequent medical visits for flu and intermittent infusion therapy and her opioid/anxiolytic prescriptions for pain/anxiety (*see* AR. 542 (emphasis in original)). Dr. Regimbal's opinion that plaintiff would have severe difficulty with consistent attendance at a full-time job is significant and probative evidence that the ALJ erred by not providing any reason for failing to credit fully. *See Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (the ALJ "may not reject 'significant probative evidence' without explanation") (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). In fact, it appears that the ALJ was unaware of this opinion by plaintiff's treating physician, which was followed by the treating physician's opinion that plaintiff is "disabled by this symptom complex" (*id.*). Although defendant provides her own rationale as to why some of Dr. Regimbal's opinion could have been rejected, according to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ

- - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (citing *Chenery Corp, supra*, 332 U.S. at 196).

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ failed to offer specific and legitimate reasons based on substantial evidence in the record as a whole for her failure to credit fully the opinions of Dr. Regimbal. The Court also concludes that the error is not harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)). Recently the Ninth Circuit reaffirmed the explanation in *Stout* that "ALJ errors in social security are harmless if they are 'inconsequential to the ultimate nondisability determination' and that 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. July 10, 2015) (citing *Stout,* 454 F.3d at 1055-56). In *Marsh,* even though "the district court gave persuasive reasons to determine harmlessness," the Ninth Circuit reversed and remanded for further administrative proceedings, noting that "the decision on disability rests with the ALJ and the

Commissioner of the Social Security Administration in the first instance, not with a district court." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(3)).

Dr. Regimbal provided numerous opinions regarding plaintiff's limitations, such as that plaintiff could only occasionally lift 10 pounds, frequently lift less than 10 pounds, and needed to be able to alternate periodically between sitting and standing in order to relieve pain or discomfort (*see* AR. 536) . He also opined that plaintiff's combined symptom complex in addition to her frequent medical visits for flu and intermittent infusion therapy and her opioid/anxiolytic prescriptions for pain/anxiety "severely limit her ability to <u>consistently</u> be available for employment activities" (AR. 542). The ALJ does not appear to have offered any reason for failing to credit fully Dr. Regimbal's opinion regarding this latter limitation. The Court cannot conclude with confidence that "'no reasonable ALJ, when fully crediting the [opinions of Dr. Regimbal], could have reached a different disability determination,'" therefore, the error in the ALJ's evaluation of his medical opinions is not harmless. *Marsh*, 792 F.3d at 1173 (citing *Stout,* 454 F.3d at 1055-56).

Although the Court concludes that the this matter must be reversed and remanded for further proceedings consistent with this Order, because this case already has been remanded once before, the Court will provide some further guidance on the remainder of the issues raised by plaintiff.

### B.  Dr. Barbara Dahl, PhD, treating doctor

Although Dr. Dahl may have been a treating psychologist, the ALJ noted that "Dr. Dahl saw the claimant for a very limited period of time and only for seven sessions" (AR.

559). Although noting this does not entail a specific and legitimate reason for failing to credit fully the medical opinion, it was not improper for the ALJ to note this finding, which is based on substantial evidence in the record as a whole.

When failing to credit fully the medical opinion of Dr. Dahl, the ALJ relied in part on a finding that there was "no evidence that Dr. Dahl performed a mental status exam [MSE] or any cognitive testing on which to base her opinion" (AR. 559). This finding by the ALJ is supported by substantial evidence in the record as a whole. Plaintiff argues that this rationale is not legitimate because the ALJ relied on state agency medical consultants who did not perform an MSE (Dkt. 9, p. 5). Defendant responds that although it is true that the state agency doctors did not conduct MSEs, "they were at least able to review the record evidence, including testing administered by other doctors and evidence showing that plaintiff lacked credibility" (Dkt. 10, p. 9 (citing AR. 69-80, 82-96)). Although plaintiff additionally argues that there is no case law dictating that a MSE must be performed before a medical opinion regarding mental limitations can be considered by ALJ, this does not mean that the failure to conduct an MSE is not a specific and legitimate reason for failing to credit fully an opinion from a psychologist in the context of a particular case.

Based on this particular record as a whole, with special regard to the actual treatment record provided by Dr. Dahl and the functional capacity assessment by Dr. Dahl, the Court concludes that this reason by the ALJ for failing to credit fully the opinion of Dr. Dahl is a specific and legitimate reason based on substantial evidence in the record as a whole for failing to credit fully Dr. Dahl's opinion in this matter.

The ALJ also noted that the majority of the time that plaintiff was seeing Dr. Dahl, plaintiff "discussed her family stress including setting boundaries with her daughter around babysitting," and also noted that it appeared "that the claimant primarily saw Dr. Dahl to support her disability claim" (AR. 559 (citing AR. 525-28)). The ALJ noted that after plaintiff saw Dr. Dahl seven times, "she called her attorney's office wanting to know if there was something Dr. Dahl could do to help [with her disability application, and that] after Dr. Dahl wrote a statement for the claimant, the claimant did not return" (*id.*). The Court has reviewed all of the treatment records between plaintiff and Dr. Dahl in the record and concludes that these findings by the ALJ are supported by substantial evidence in the record as a whole. There are no notations in the treatment record with Dr. Dahl of any objective findings of attention or concentration difficulties, yet Dr. Dahl indicated in her functional capacity assessment that plaintiff's "pain level, depression and anxiety all negatively impact [plaintiff's] capacity for sustained attention" (AR. 527). Similarly, although nothing in plaintiff's treatment record with Dr. Dahl indicates that plaintiff was demonstrating labile emotions, Dr. Dahl opined that plaintiff's "mental health issues have resulted in labile emotions when in pain, when depressed and when anxious" (*id.*). Similarly, although nothing in plaintiff's treatment record with Dr. Dahl indicates that plaintiff demonstrated any difficulties regarding understanding or memory, Dr. Dahl opined that plaintiff suffered from a marked inability to understand and remember detailed instructions (*see* AR. 525). Furthermore, nothing in plaintiff's treatment record with Dr. Dahl supports Dr. Dahl's opinion that plaintiff suffers from marked inability to set realistic goals or make plans independently of others (*see* AR.

526). Based on the stated reasons and the record as a whole, with particular attention being paid to the treatment record with Dr. Dahl, the Court concludes that the ALJ's finding that Dr. Dahl's "treatment notes are very brief and are inconsistent with marked limitations" is a finding based on substantial evidence in the record as a whole (*see* AR. 559). The Court also concludes that this finding supports the ALJ's failure to credit fully Dr. Dahl's medical opinion.

For the reasons stated and based on the record as a whole, the Court concludes that the ALJ offered specific and legitimate reasons based on substantial evidence in the record as a whole for her failure to credit fully the medical opinion of Dr. Dahl.

### C. Dr. Jesse McClelland, MD, examining physician

Dr. McClelland examined plaintiff on August 16, 2011 (AR. 436-41). As noted by the ALJ, Dr. McClelland opined that plaintiff should be able to perform simple and repetitive tasks, which the ALJ accommodated in plaintiff's RFC (AR. 440, 551, 557). However, Dr. McClelland also opined that plaintiff may struggle to accept instructions from supervisors because of her post traumatic stress disorder and depression (AR. 557). He also opined that plaintiff likely would not be able to deal with the usual stress encountered in the workplace, also may struggle to maintain regular attendance, and would have interruptions in a normal workday or workweek due to her symptoms (AR. 440-41, 557-58).

The ALJ provided a thorough discussion regarding the medical opinion of Dr. McClelland, and offered a number of reasons for failing to credit fully medical opinion of Dr. McClelland (*see* AR. 557-59).  For example, the ALJ noted that contrary to plaintiff's

presentation at Dr. McClelland's August 16, 2011 exam, approximately a year later, on

October 17, 2012, plaintiff's "treating provider described her as delightful" (AR. 558

(citing AR. 465)). Plaintiff argues that the ALJ's reliance on this contrast is not legitimate

because in "the same chart note where Dr. Regimbal described [plaintiff's] as 'delightful'

he also opined that [plaintiff] was 'increasingly anxious' and accordingly added

Mirtazapine into her medication regime" (Dkt. 9, p. 7 (citing AR. 310)). However,

plaintiff cites a different treatment record than that cited by the ALJ. When drawing her

contrast, the ALJ contrasted plaintiff's August 16, 2011 presentation with Dr. McClelland

as anxious and tearful, with her presentation on October 17, 2012 with her treating

physician as "delightful," citing AR. 465 (*see* AR. 558).  Indeed, consistent with the

ALJ's finding, on October 17, 2012, plaintiff's treating physician described plaintiff as

"delightful" (AR. 465). On that occasion, plaintiff's treating physician, Dr. Regimbal,

also noted plaintiff's report that she was "overall functioning reasonably well at this point

. . . ." (*id.*). It appears that Dr. Regimbal's only diagnosis for plaintiff regarding mental

impairments at this time was for depression, which he noted was "well-controlled at the

present time on the meds as listed above, no new symptoms, functional status is good"

(AR. 467). Therefore, the Court concludes that plaintiff's argument is not persuasive, and

concludes that the ALJ's implication that plaintiff's presentation with Dr. McClelland

was inconsistent with her subsequent presentation to her treating physician approximately

one year later is a finding based on substantial evidence in the record as a whole. The

Court also concludes that this finding of an inconsistency between Dr. McClelland's

examination and plaintiff's presentation with her treating provider approximately 1 year later supports the ALJ's failure to credit fully the medical opinion of Dr. McClelland.

The ALJ also found that Dr. McClelland's August 16, 2011 prognosis was "not consistent with the record and detracts from his opinion in general" (AR. 559). In support, the ALJ noted that Dr. McClelland opined that plaintiff's "symptoms are chronic and resistant to treatment," while in contrast "only two months after his exam, her treating providers indicate that the claimant was overall doing well and her depression had much improved" (*id*. (citing AR. 448); *see also* AR. 440). On October 6, 2011, plaintiff reported to her treating physician, Dr. Regimbal, that she had no depression, confusion, or memory loss (AR. 447). He opined that her cognition was "stable without change" (*id*.). He noted that plaintiff's depression was "much improved," but also noted that she was increasingly anxious (AR. 448).

In contrast to the opinion of Dr. McClelland on August 16, 2011 that plaintiff's symptoms were chronic and resistant to treatment, on October 6, 2011, approximately 2 months later, plaintiff's treating physician opined that her depression was much improved (*see* AR. 448). Although the treating physician also indicated that the anxiety was increasing, for which he added a new prescription, this treatment record provides substantial evidence in the record as a whole to support the ALJ's finding that Dr. McClelland's opinion that plaintiff's symptoms were chronic and resistant to treatment is not consistent with the record demonstrating "much improvement" two months later. This finding by the ALJ also provides for the support for her failure to credit fully the medical opinion of Dr. McClelland.

1    It may be true that not every reason offered by the ALJ for her failure to credit

2  fully the opinions of Dr. McClelland is legitimate, however the Court concludes that any

3  error is harmless. *See Molina*, 674 F.3d at 1115 (citations omitted) ("several of our cases

4  have held that an ALJ's error was harmless where the ALJ provided one or more invalid

5  reasons for disbelieving a claimant's testimony, but also provided valid reasons that were

6  supported by the record"). For example, the ALJ appears to rely on plaintiff's dog

7  breeding, however, plaintiff testified on December 20, 2012, that her son "takes care of

8  the dogs mostly [and] he's taken over the dogs" (AR. 44).

9

10    For the reasons stated and based on the record as a whole, Court concludes that the

11  ALJ provided specific and legitimate reasons based on substantial evidence in the record

12  as a whole for failing to credit fully the medical opinion of Dr. McClelland.

13                                       CONCLUSION

14    Based on the stated reasons and the relevant record, the Court **ORDERS** that this

15  matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. §

16  405(g) to the Acting Commissioner for further consideration consistent with this order.

17    **JUDGMENT** should be for plaintiff and the case should be closed.

18  Dated this 28th day of November, 2016.

19

20

21  J. Richard Creatura
     United States Magistrate Judge

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 17